[Cite as *Schwind v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-3995.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jared Schwind, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 22AP-230 |
| v. | : | (Ct. of Cl. No. 2020-00314JD) |
| Ohio Department of Rehabilitation and Correction, | : | (ACCELERATED CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on November 8, 2022

**On brief:** *Jared Schwind*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Jeanna Jacobus*, for appellee.

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, Jared Schwind, pro se, appeals from a judgment of the Court of Claims of Ohio granting summary judgment to defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). Because appellant did not present any evidence qualifying as expert medical testimony to establish the standard of care, breach, and proximate cause for his medical malpractice claim, we affirm.

{¶ 2} On June 17, 2020, appellant, an inmate at the Madison Correctional Institution ("MCI"), filed, pro se, an amended complaint for medical malpractice against ODRC. In the amended complaint, appellant asserted that 17 years prior to his incarceration, he suffered an injury which causes his shoulder to periodically dislocate.

During that 17-year period, appellant received chiropractic treatment which involved putting his shoulder back into place whenever it dislocated. Appellant also asserted that he suffers from a herniated disc. Appellant alleged that the medical treatment he has received at MCI for his conditions consists of "pills that simply do not work" and "talking to him." (June 17, 2020 Am. Compl. at ¶ 8, ¶ 14.) Appellant indicated that his pain is so significant that he often sleeps in a chair. Appellant alleged that MCI's failure to (1) timely X-ray his shoulder, (2) provide chiropractic services, and (3) treat the herniated disc constitutes medical malpractice.

{¶ 3} On October 12, 2020, the trial court ordered appellant to furnish ODRC with the names of any expert witnesses and a copy of their reports on or before April 9, 2021. Appellant did not comply with that order. He subsequently obtained counsel, who filed a motion to continue the trial scheduled for November 2021 and extend discovery deadlines. On July 23, 2021, the trial court granted appellant's motion, continued the trial to April 2022, and ordered the parties to submit a discovery plan including new deadlines for expert witness disclosure and a discovery deadline. Pursuant to that order, the parties filed a discovery plan setting appellant's new expert disclosure deadline as October 1, 2021, and setting the discovery deadline as December 3, 2021. Appellant did not meet the October 1, 2021 expert disclosure deadline.

{¶ 4} On October 6, 2021, the trial court granted appellant's counsel's motion to withdraw; thereafter, appellant proceeded pro se. On December 6, 2021, ODRC filed a motion for summary judgment arguing that appellant could not prove his claim of medical malpractice because he failed to produce expert testimony addressing the issues of the applicable standard of care in the medical community, ODRC's breach of that standard of care, and proximate cause. ODRC attached to its motion the affidavit of ODRC counsel attesting that appellant had not provided the name of a physician or other expert witness to testify on his behalf that ODRC was negligent in providing medical care to him. Counsel further attested that appellant was served with requests for admissions on October 4, 2021, which asked appellant to admit or deny that (1) he did not have a doctor or any other expert who would testify at trial that anyone at ODRC was negligent in providing medical care and, (2) he did not send a copy of a report from any expert witness to ODRC on or before the October 1, 2021 deadline. Counsel further attested that in his response to the requests for

admissions, appellant denied that he did not have a physician or other expert who would testify at trial but admitted that he had not sent ODRC counsel the report of that expert witness. Based on the requests for admissions and appellant's failure to produce an expert report addressing the standard of care, breach of the standard of care, and proximate cause, ODRC argued that appellant could not prevail on his medical malpractice claim and that it was entitled to summary judgment as a matter of law.

{¶ 5} On December 10, 2021, appellant filed a motion for an extension of time to file an expert witness report and subpoena documents. In his motion, appellant averred that his expert (who appellant did not expressly identify in the motion) had been prevented from obtaining the necessary documents to generate an expert report. Appellant further related that his former counsel had failed to oversee the production of an expert report.

{¶ 6} On January 10, 2022, appellant filed a motion pursuant to Civ.R. 35 requesting that he be examined by his chiropractor, Dr. Stephen Aurand. Appellant attached to the motion an unauthenticated letter from Dr. Aurand dated January 8, 2022. In that letter, Dr. Aurand stated that appellant was a long-time patient and had been treated for complaints similar to what appellant reported he was currently experiencing. He further averred that absent a physical examination of appellant, he could not provide a treatment recommendation for him. Dr. Aurand indicated that he would be willing to examine and treat appellant at the prison at no cost. He further noted that transportation to his office for a thorough examination and X-rays would allow him to better diagnose appellant's condition.

{¶ 7} In a separate filing on January 10, 2022, appellant, apparently in conjunction with his December 10, 2021 motion for an extension of time to subpoena documents, filed a subpoena duces tecum ordering ODRC to produce X-rays and photographs of appellant taken by MCI from March 1, 2020 to September 30, 2021, and to mail those documents to Dr. Aurand's office. The record contains no evidence that appellant caused the subpoena to be served on ODRC.

{¶ 8} On January 10, 2022, the trial court granted appellant's December 10, 2021 motion for an extension. The trial court permitted appellant until February 7, 2022 to obtain an expert report and provide a copy of that report to counsel for ODRC and ordered that appellant respond to ODRC's motion for summary judgment by that date.

{¶ 9} On January 12, 2022, appellant filed a response to ODRC's motion for summary judgment. Appellant referenced his January 10, 2022 motion for a physical examination by Dr. Aurand, describing the motion as an "affidavit in support of this reply * * * which indicates the factual disputes that the plaintiff believes exists, that [h]e can sustain his burden of proving his medical malpractice claim and does have an expert witness." (Jan. 12, 2022 Reply to Def.'s Mot. for Summ. Jgmt.)

{¶ 10} On February 7, 2022, appellant submitted a second response to ODRC's motion for summary judgment. Appellant again maintained that he could sustain his burden of proving medical malpractice through expert testimony. Appellant attached to his response several unauthenticated documents, including electronic communications between him and his former counsel, electronic communications between him and a person identified as Joseph Clark, and informal prison grievances. Appellant also attached a form captioned "Expert Witness Form." The form, which appears to have been completed by Dr. Aurand on February 4, 2022, includes his name and address and lists under "Expert Witness Qualifications" that he has been a chiropractor for 21 years and last treated appellant in July 2017. The form also provides the following "Expert Witness Statement": "Jared deal[s] w/thoracic spine issues that will influence the ribs, and triggers episodes of a costochondritis. Once flared it is a very difficult issue to resolve. In the past he did well under my treatment, and the issues seem to mostly resolve. It is hard to gauge his current issues as he has not been seen in nearly 5 years." (Feb. 7, 2022 Reply to Def.'s Mot. for Summ. Jgmt.)

{¶ 11} On March 9, 2022, the trial court entered summary judgment for ODRC. The court determined that there was no genuine issue of material fact and that ODRC was entitled to judgment as a matter of law because appellant could not prevail on his claim of medical malpractice after failing to obtain an expert and provide an expert report regarding the standard of care, breach of that standard of care, and proximate cause.

{¶ 12} Appellant appeals, assigning the following error:

> The Court of Claims erred as a matter of law in granting appellee's 56(C) motion for summary judgment by holding that appellant failed to provide any evidence and failed to obtain an expert and provide expert report before being able to bring a medical malpractice claim against Ohio Department of Rehabilitation and Correction.

{¶ 13} In his single assignment of error, appellant argues that the trial court erred as a matter of law in granting summary judgment to ODRC. More specifically, appellant contends the trial court erred by finding that he failed to obtain an expert and provide an expert report to support his medical malpractice claim. We disagree.

{¶ 14} Appellate review of summary judgment is de novo. *Hudson v. Petrosurance, Inc.,* 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC,* 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.).

{¶ 15} Civ.R. 56(C) provides in part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 16} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.* Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Id.*; Civ.R. 56(E).

{¶ 17} " '[A]n inmate is under no different burden than any other plaintiff in a medical malpractice claim.' " *Gibson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-379, 2019-Ohio-4955, ¶ 10, quoting *Nicely v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-197, 2009-Ohio-4386, ¶ 9. In order to prevail on a claim of medical malpractice, a plaintiff must prove: (1) the standard of care recognized by the medical community; (2) the defendant's breach of that standard of care; and (3) a direct causal connection between the breach and the injury sustained. *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976). The appropriate standard of care must be proven by expert testimony. *Id.* at 130. That expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. *Id.* The failure to provide expert testimony establishing the recognized standards of care in the medical specialty community is fatal to the presentation of a prima facie case of medical malpractice. *Gibson* at ¶ 10, citing *Grieser v. Janis*, 10th Dist. No. 17AP-3, 2017-Ohio-8896, ¶ 20. By local rule of the Court of Claims, a party is prohibited from calling an expert witness to testify unless a written report has been procured from that witness. *Sanchez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-765, 2019-Ohio-2534, ¶ 27, citing L.C.C.R. (8)(E).

{¶ 18} Although appellant's arguments are difficult to decipher, he appears to contend that he obtained an expert, Dr. Aurand, who provided the requisite expert medical report vis-à-vis his January 8, 2022 letter and the February 4, 2022 expert witness form. We first note that neither of these documents constitute proper Civ.R. 56(C) material, as neither is in affidavit form. "An affidavit is a written declaration under oath." R.C. 2319.02; *Moss v. Bush*, 104 Ohio St.3d 1443, 2004-Ohio-7119. Dr. Aurand did not swear to the contents of the letter or the expert witness form under oath; he merely signed the documents.

{¶ 19} Even if the documents could be construed as proper Civ.R. 56(C) evidence, in neither document does Dr. Aurand express any opinion regarding the standard of medical care recognized by the medical community in treating a shoulder dislocation and herniated disc, ODRC's breach of that standard of care, and a direct causal connection between ODRC's breach and appellant's injuries. In the January 8, 2022 letter, Dr. Aurand simply avers that he had treated appellant for conditions similar to those about which appellant now complains but could not provide a treatment plan for appellant without

conducting a thorough physical examination. Dr. Aurand does not indicate that the physical examination of appellant is for the purpose of providing an expert opinion about the applicable standard of care, ODRC's breach of that standard of care, or proximate cause. In the expert witness form, Dr. Aurand merely discusses past chiropractic treatment he provided appellant and notes the difficulty in diagnosing appellant's current condition.

{¶ 20} We note that appellant attaches to his brief a March 12, 2021 letter from Dr. Aurand (Ex. B). This letter was not attached to any document filed by appellant in the trial court; as such, it may not be considered on appeal. "[A]n appellate court is bound to the record before it and may not consider facts extraneous to that record. *Fitzgerald v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 03AP-1197, 2004-Ohio-3725, ¶ 11, citing *Paulin v. Midland Mut. Life Ins. Co.*, 37 Ohio St.2d 109, 112 (1974). Moreover, the letter does not include any statement by Dr. Aurand regarding the applicable standard of care, ODRC's breach of that standard of care, or proximate cause; rather, Dr. Aurand simply offers to help appellant with treatment.

{¶ 21} In a related argument, appellant appears to contend that Dr. Aurand was unable to provide an expert report because ODRC prevented him from viewing or otherwise accessing appellant's medical records. Appellant characterizes ODRC's action as a violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Appellant states, "under Brady, the state violates a defendant's right to due process if it withholds evidence that is favorable to the defence [sic] and material to the defendant's guilt or punishment." (Appellant's Brief at 2.) *Brady* addresses due process principles in the context of the withholding of exculpatory evidence in a criminal prosecution. Appellant cites no case law applying *Brady* in the framework of a civil case. As appellant's case does not involve a criminal prosecution, his citation to *Brady* is unavailing.

{¶ 22} Moreover, "R.C. 5120.21(C)(2) places limitations on an inmate's access to medical records." *Nicely*, 10th Dist. No. 09AP-187, 2009-Ohio-4386, ¶ 8. In *Goings v. Dept. of Rehab. & Corr.,* 10th Dist. No. 90AP-1041 (May 28, 1991), this court averred, "R.C. 5120.21(C)(2) states that the inmate's medical records shall be available for review on two conditions. One is that the inmate make a signed written request for the records, and the other is that his request be accompanied by a written request of an attorney or physician designated by the inmate." *Id.* at * 7. Even construing appellant's January 10, 2022

subpoena duces tecum filing as a signed written request for his medical records, such request was not accompanied by a written request of an attorney or physician designated by appellant. Appellant thus failed to meet the requirements of R.C. 5120.21(C)(2) to obtain a copy of his medical records.

{¶ 23} In addition, "Civ.R. 56(F) provides the sole remedy for a party who must respond to a motion for summary judgment before it has completed adequate discovery." *Hernandez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-37, 2017-Ohio-8646, ¶ 17, citing *Mootispaw v. Mohr*, 10th Dist. No. 15AP-885, 2016-Ohio-1246, ¶ 10. "Pursuant to Civ.R. 56(F), a party may request that the trial court defer ruling on the motion for summary judgment pending the completion of discovery." *Id.*, citing *Mootispaw* at ¶ 10. "When a party fails to move for a Civ.R. 56(F) continuance, a trial court may grant summary judgment to the moving party even if discovery remains incomplete." *Id.* "Moreover, the party that fails to move for a Civ.R. 56(F) continuance does not preserve his right to challenge the adequacy of discovery on appeal." *Id.* Here, appellant did not move for a continuance under Civ.R.(F) to complete discovery.

{¶ 24} In this case, ODRC supported its motion for summary judgment with appropriate Civ.R. 56(C) evidence (ODRC counsel's attestations that appellant had not provided the name of an expert witness who would testify on his behalf and the authenticated attachments regarding appellant's admission that he had not sent counsel a written report by an expert witness). Appellant failed to provide any appropriate Civ.R. 56(C) evidence to controvert ODRC's evidence and demonstrate a genuine issue of material fact. Accordingly, there is no dispute that appellant failed to provide ODRC's counsel with the name of an expert witness who would testify that ODRC breached the standard of care and that such breach proximately caused appellant's injuries. Further, appellant did not provide an expert report to ODRC's counsel by the deadlines imposed by the trial court.

{¶ 25} To prevail on his medical malpractice claim, appellant was required to present proof, via expert testimony, on the standard of care recognized by the medical community regarding treatment of a shoulder dislocation and herniated disc, ODRC's breach of that standard of care, and a direct causal connection between ODRC's breach and appellant's injuries. Appellant failed to do so. Thus, ODRC was entitled to judgment as a matter of law, and the trial court did not err in so concluding.

{¶ 26} For the foregoing reasons, appellant's assignment of error is overruled.

{¶ 27} As a final matter, we deny appellant's "Motion for Relief from Judgment" filed in this court on August 10, 2022. Motions for relief from judgment are governed by Civ.R. 60(B). In *Martin v. Roeder*, 75 Ohio St.3d 603 (1996), the Supreme Court of Ohio held that that a motion pursuant to Civ.R. 60(B) is inapplicable to review a court's judgment on appeal. *Id*. at 604.

{¶ 28} Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Court of Claims of Ohio.

*Motion for relief from judgment denied;*
*judgment affirmed.*

DORRIAN and JAMISON, JJ., concur.